Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*POP MART Americas Inc.,*
*POP MART (Singapore) Holding Pte. Ltd. and*
*Beijing POP MART Cultural & Creative Co. Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POP MART AMERICAS INC., POP MART (SINGAPORE) HOLDING PTE. LTD. and BEIJING POP MART CULTURAL & CREATIVE CO. LTD, <br><br> *Plaintiffs* <br><br> v. <br><br> BLUE BLISS, CAITLINWOLLMAN, CALM INSIDE EASY STYLE, DISNEY GENUINE AUTHORIZATION MARKETPLACE, DRAG0N TOYS MARKETPLACE, ER ORNAMENT, GOOD FORTUNE STORE MARKETPLACE, JIHONGSHANGWU MARKETPLACE, JUNYA ENTERTAINMENT SUPPLIES, KUANGJU TOY, KUTIEKANDIES, LSHBD, LUCKY PENS & STICKERS, LUISA GRAFF DIAMONDS, MC FASHION ROOM, MUSCLE GROWTH SUPPORT, POP-FASHIONTREND, RELATIONSHIP CENTER, STONE SHOP, WEIRUI and YIWUBC22, <br><br> *Defendants* | 25-cv-7788 (JGK) <br><br> [PROPOSED] <br> **PRELIMINARY INJUNCTION ORDER** |

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiffs or POP MART** | POP MART Americas Inc. ("POP MART Americas"), POP MART (Singapore) Holding Pte. Ltd. ("POP MART Singapore") and Beijing POP MART Cultural & Creative Co., Ltd. ("POP MART Beijing") |
| **Defendants** | Disney genuine authorization Marketplace, Junya entertainment supplies and LUCKY PENS & STICKERS |
| **Shein** | Shein.com, a Singapore based global e-commerce platform owned by parent company Roadget Business Pte. Ltd. that uses on-demand manufacturing technology to connect suppliers to the Shein supply chain and allows manufacturers and other third-party merchants like Defendant, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **TikTok** | TikTok, incorporated in the Cayman Islands and owned by parent company, ByteDance, based in Beijing, is a social media and social e-commerce platform |
| **TikTok Shop** | A shopping platform within the TikTok app that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale and sell retail products through in-app purchases on TikTok, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiffs' Complaint |
| **Application** | Plaintiffs' *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Lin Dec.** | Declaration of Fei Lin in Support of Plaintiffs' Application |
| **Turitto Dec.** | Declaration of Michael Turitto in Support of Plaintiffs' Application |
| **LABUBU Products** | Elf-like figures with mischievous looks that come in a variety of shapes, sizes, colors and styles, such as keychains, plush dolls, and accessories, originating from POP MART's collectible series, "THE MONSTERS" |
| **LABUBU** | U.S. Trademark Registration Nos.: 6,592,820 for " |

| | |
|---|---|
| **Registrations** | "**POP MART**" for a variety of goods in Class 28; 7,839,156 for "**THE MONSTERS**" for a variety of goods in Class 28; and 7,839,144 for "LABUBU" for a variety of goods in Class 28 |
| **LABUBU Application** | U.S. Application No: 79/402,363 for "POP MART" for a variety of goods in Classes 14 and 25 |
| **LABUBU Marks** | The marks covered by the LABUBU Registrations and LABUBU Application |
| **LABUBU Works** | The works covered by the U.S. Copyright registrations listed in Exhibit D to the Complaint |
| **Counterfeit Products or Infringing Products** | Products bearing or used in connection with the LABUBU Marks and/or LABUBU Works, and/or products in packaging and/or containing labels bearing the LABUBU Marks and/or LABUBU Works, and/or bearing or used in connection with marks and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks and/or LABABU Works, and/or products that are identical or confusingly similar to LABUBU Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Shein and/or TikTok Shop as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the |

|  | U.S. or abroad) |
|---|---|
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Shein and/or TikTok Shop, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, make, use, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHERAS, Plaintiffs having moved *ex parte* on September 19, 2025 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiffs' Application on October 1, 2025 ("TRO") which ordered Defendants to appear on October 14, 2025 at 4:30 p.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on October 9, 2025, Plaintiffs wrote a letter to the Court requesting modification and extension of the TRO, and on October 10, 2025, the Court entered an Order granting Plaintiffs' request and adjourning the Show Cause Hearing to October 28, 2025 at 4:30 p.m. ("October 10, 2025 Order");

WHEREAS, on October 23, 2025, pursuant to the alternative methods of service authorized by the TRO, Plaintiffs served the Summons, Complaint, the October 10, 2025 Order and all papers filed in support of Plaintiffs' Application on each and every Defendant, except Defendants CaitlinWollman, Disney genuine authorization Marketplace, Good fortune store Marketplace, Junya entertainment supplies and LUCKY PENS & STICKERS (Dkt. 35);

WHEREAS, on October 27, 2025, after receiving updated email addresses for Defendants Disney genuine authorization Marketplace, Junya entertainment supplies and LUCKY PENS & STICKERS, Plaintiffs served the Summons, Complaint, the October 10, 2025 Order and all papers filed in support of Plaintiffs' Application on Defendants Disney genuine authorization Marketplace, Junya entertainment supplies and LUCKY PENS & STICKERS ("October 27, 2025 Service Defendants") (Dkt. 35);

1

WHEREAS, on November 3, 2025, the Court entered an Order setting a briefing schedule for the October 27, 2025 Service Defendants, which scheduled a Show Cause Hearing for November 14, 2025 at 3:00 p.m. ("November 3, 2025 Order") (Dkt. 30);

WHEREAS, on November 5, 2025, pursuant to the methods of alternative service authorized by the TRO, Plaintiffs served a copy of the November 3, 2025 Order on each and every October 27, 2025 Service Defendant (Dkt. 31);

WHEREAS, on November 7, 2025, the Court entered an Order advancing the Show Cause Hearing scheduled for November 14, 2025 at 3:00 p.m. to Thursday, November 13, 2025 at 3:30 p.m. ("November 7, 2025 Order") (Dkt. 32);

WHEREAS, on November 11, 2025, pursuant to the methods of alternative service authorized by the TRO, Plaintiffs served a copy of the November 7, 2025 Order on each and every October 27, 2025 Service Defendant (Dkt. 33);

WHEREAS, on November 13, 2025, 2025 at 3:30 p.m., Plaintiffs appeared at the Show Cause Hearing. However, none of the October 27, 2024 Service Defendants appeared. 

### PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW

A.  Plaintiffs are likely to prevail on their Lanham Act, Copyright Act and related common law claims at trial.

B.  As a result of Defendants' infringements, Plaintiffs, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries:

   a. Defendants have offered for sale and sold substandard Counterfeit Products in the United States that infringe the LABUBU Marks and/or LABUBU Works; and

   b. Plaintiffs have well-founded fears that more Counterfeit Products will appear in the United States marketplace; that consumers may be misled, confused and disappointed

by the quality of these Counterfeit Products, resulting in injury to Plaintiffs' reputation and goodwill; and that Plaintiffs may suffer loss of sales for the LABUBU Products.

C. The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a preliminary injunction order is issued is far outweighed by the potential harm to Plaintiffs, their business, the goodwill and reputation built up in and associated with the LABUBU Marks and/or LABUBU Works and to their reputation if the relief granted in the TRO is not continued through the pendency of this action.

D. Public interest favors issuance of the preliminary injunction order in order to protect Plaintiffs' interests in and to their LABUBU Marks and/or LABUBU Works, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as LABUBU Products.

## **ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this action, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the LABUBU Marks and/or LABUBU Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the LABUBU Marks and/or LABUBU Works;

   ii. operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order;

   iii. directly or indirectly infringing in any manner Plaintiffs' LABUBU Marks and/or LABUBU Works;

   iv. using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' LABUBU Marks and/or LABUBU Works to identify any goods or services not authorized by Plaintiffs;

   v. using Plaintiffs' LABUBU Marks and/or LABUBU Works and/or any other marks and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks and/or LABUBU Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

4

vi. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiffs;

vii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

viii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

ix. knowingly instructing any other person or business entity to engage in any of

5

the activities referred to in subparagraphs 1(a)(i) through 1(a)(viii) above, 1(b)(i) and 1(c)(i) below.

b) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

   ii. instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(viii) above, 1(b)(i) and 1(c)(i)-(ii) below, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts until further ordered by this Court.

c) Accordingly, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. operation of Defendants' User Accounts and Defendants' Merchant

        Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order; and

    ii.  instructing, aiding or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(viii), 1(b)(i) and 1(c)(i) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts in violation of this Order.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a)  within five (5) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiffs' counsel and provide Plaintiffs' counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

    a) Plaintiffs may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall

provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiffs' counsel.

b) Plaintiffs may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiffs' counsel.

c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiffs' counsel with all documents and records in their possession, custody or control (whether located in the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, and/or Defendants' Assets, including, but not limited to, documents and records relating to:

   i. account numbers;
   ii. current account balances;
   iii. any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;
   iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;
   v. any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips,

        cancelled checks and account statements; and

  vi. any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiffs' counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

  i. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C) of the TRO;

  ii. the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C) of the TRO;

  iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of

9

   Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

  iv. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the LABUBU Marks and/or LABUBU Works and/or marks and/or artwork that are confusingly or substantially similar to, identical to and/or constitute an infringement of the LABUBU Marks and/or LABUBU Works.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

 a) delivery of: (i) PDF copies of this Order, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order to Defendants' e-mail addresses as identified by Shein and/or TikTok Shop pursuant to Paragraph V(C) of the TRO or may otherwise be determined.

5. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

 a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal

      will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

   b) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Shein will be able to download a PDF copy of this Order via electronic mail to Shein's counsel at michael.song@sheingroup.com and ip_notice@sheingroup.com;

   c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where TikTok will be able to download a PDF copy of this Order via electronic mail to TikTok's counsel at john.green@bytedance.com and e-commerce.ipnotice@tiktok.com;

   d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@payoneer.com; and

   e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to trorequest@pingpongx.com.

6. As sufficient cause has been shown, that such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

7. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. The $25,000.00 bond posted by Plaintiffs shall remain with the Court until a final disposition of this case or until this Order is terminated.

9. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiffs or on shorter notice as set by the Court.

**SO ORDERED.ss**

SIGNED this __13__ day of __November__ 2025, at __3:54__ p.m.
New York, New York

_____
HON. JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE